IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| LESLIE K. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:13-cv-342 |
| | ) | |
| v. | ) | Judge |
| | ) | |
| LENOIR CITY, TENNESSEE, and | ) | Magistrate Judge |
| TONY R. AIKENS, officially and | ) | |
| individually, DON WHITE, officially | ) | Jury Demand |
| and individually, and W. DALE HURST, | ) | |
| officially and individually, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

For her Complaint against Defendants Lenoir City, Tennessee, and Tony R. Aikens, Don White, and W. Dale Hurst, each in their official and individual capacities, Plaintiff Leslie K. Johnson states:

## PARTIES

1. Plaintiff is a citizen and resident of Loudon County, Tennessee, and a former employee of Defendant Lenoir City.

2. Defendant Lenoir City is a Tennessee governmental entity organized and existing under the laws of the State of Tennessee.

3. Defendant Aikens is a citizen and resident of Lenoir City, Tennessee, and the Mayor of Lenoir City.

4. Defendant White is a citizen and resident of Loudon County, Tennessee, and the Public Safety Director for Lenoir City.

5. Defendant Hurst is a citizen and resident of Lenoir City, Tennessee, and the City Administrator for Lenoir City.

## JURISDICTION AND VENUE

6. This is an action for violation of civil rights and unlawful employment practices brought under 42 U.S.C. § 1983; the Tennessee Public Employee Political Freedom Act, Tenn. Code Ann. § 8-50-601 *et seq.* (PEPFA); and the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304 (TPPA). The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

## FACTS

7. Ms. Johnson worked as Codes Enforcement Officer for Lenoir City from February 14, 2008, until she was discharged on January 25, 2013.

8. Ms. Johnson worked for the City under an Employment Agreement that provided for an initial term of August 11, 2008, through November 27, 2010, and subsequent automatic four-year renewal terms. At the time of her discharge she was under contract to work through at least November 27, 2014.

9. Under her Employment Agreement Ms. Johnson was entitled to severance pay in a lump sum including (1) pay out of accumulated sick, vacation, and personal leave and (2) 12 months' pay at a rate equal to the monthly rate she was receiving as of the date of her termination unless the termination was "proven" to be "for cause," which it was not.

10. The Lenoir City City Council took no action to terminate Ms. Johnson's contract or her employment before Defendants took such actions against her without the approval of the City Council.

11. Defendants breached Ms. Johnson's Employment Agreement with Lenoir City.

12. Ms. Johnson was qualified for her job with Lenoir City and performed her job duties in an excellent manner. She received outstanding performance evaluations from her supervisor, Defendant Hurst, and praises from the City Council for her performance throughout her employment.

13. Ms. Johnson did not receive disciplinary action regarding her job performance or any alleged misconduct prior to being suspended by Defendants on January 23, 2013, and discharged on January 25, 2013.

14. From or about May 2012 through January 25, 2013, Ms. Johnson repeatedly engaged in constitutionally and legally protected activity by speaking or engaging in speech activity on matters of public concern, communicating with elected public officials, and opposing and refusing to remain silent about or participate in illegal activity.

15. Ms. Johnson spoke out about, opposed and refused to remain silent about or participate in violations of federal and state law and engaged in protected activity by speaking to City officials, elected City Council members, an attorney, citizens and members of the public about matters of public concern and conduct that she reasonably believed to be illegal and in violation of applicable laws, regulations, rules, ordinances, and codes.

16. Speaking to public officials, City Council members, attorneys and others about matters of public concern and illegal conduct was not a part of Ms. Johnson's regular or official job duties, and substantial portions of her speech activity were not given pursuant to a duty as a Codes Enforcement Officer but rather as a cooperative person and concerned citizen exposing what she believed to be wrongdoing in the local government.

17. Ms. Johnson communicated to public officials, City Council members, an attorney and others about Defendants' attempts to occupy and use portions of the SunTrust Bank

Building in Lenoir City as a new City Hall without ensuring that it was compliant with the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. (ADA) and other applicable state and local building codes, rules and regulations designed to protect the public. Ms. Johnson repeatedly communicated that, before this aged building, the upper floors of which had been vacant for years, could be occupied and used as a City Hall, it would need to be made ADA and Codes-compliant. She further expressed concerns about being excluded from meetings in which, in light of these issues, she should have been included.

18. In October 2012 Ms. Johnson advised City officials and City Council members that applicable laws, regulations and Codes would require inspections of the SunTrust Building and various reviews before it could be used in the manner that Defendants intended. She advised them that she needed to review a copy of a construction floor plan and an August 2012 preliminary report that an architectural firm had been commissioned to prepare. She further advised them that a Licensed General Contractor should be used to make necessary and required improvements to the building. She advised them that these included, at a minimum, ADA compliance issues and egress, emergency lighting, and basic Life Safety 101 issues.

19. Defendant White openly expressed his objections to Ms. Johnson's above-stated concerns. White complained about the cost associated with required drawings, inspections and reviews and with having a Licensed General Contractor perform the work instead of unlicensed individuals whom he uses to work on his private rental properties.

20. Ms. Johnson advised City officials and City Council members that she could not sign a Certificate of Occupancy or issue a Building Permit on a building that she had not been permitted to inspect and that was not ADA and Codes compliant. She further advised them that

she feared that employees and members of the public may be injured and pursue claims against the City and her if these laws and Codes were not adhered to.

21. In mid-October 2012 Defendant Hurst advised Ms. Johnson that he would speak to Defendant Aikens about her stated concerns and get back to her. In late October 2012 Hurst advised Ms. Johnson that he had done so and would follow up again after the election.

22. In November 2012 the City purchased the SunTrust Building with the intent of using it as its City Hall.

23. On November 9, 2012, Aikens asked the City Council to appoint White to the new position of Public Safety Director over Codes, Planning, and the Police and Fire Departments. This was carried out without an ordinance having been drafted and without a public hearing having been held in accordance with the Lenoir City Charter.

24. On the afternoon of November 9, 2012, Aikens advised Ms. Johnson that the City was "going in a new direction with management" and that White was the new Public Safety Director and her new supervisor.

25. On or about November 20, 2012, Ms. Johnson had a meeting with White in which she again expressed her concerns about the SunTrust Building.

26. On or about December 5, 2012, White stated his plans to renovate the second floor of the SunTrust Building so that the Police Department could occupy it and Ms. Johnson reiterated her concerns. White again complained about the cost of complying with the ADA and applicable Codes and about using a Licensed General Contractor for necessary improvements. White and Hurst also stated that Aikens wanted to move the Police Department into the SunTrust Building as of January 2013.

27. On or about December 19, 2012, Ms. Johnson expressed her concerns about Defendants' plans with respect to the SunTrust Building to a City Councilman.

28. On or about January 9, 2013, White announced that part-time Lenoir City police officers would perform the construction work and improvements on the second floor of the SunTrust Building. Ms. Johnson again expressed her concerns about ADA and Codes compliance issues and stated that they should be addressed by a Licensed General Contractor. White again complained about the cost. He had already been asking City Council members for funds to pay unlicensed individuals to erect walls and perform construction work and other improvements on the second floor of the SunTrust Building.

29. On January 10, 2013, Ms. Johnson reiterated her concerns in a Purchasing Committee meeting to three additional City Council members and to White, Hurst, and Aikens. Nevertheless, White obtained approximately $10,000 from the City Council to begin construction activities, including creating new office spaces and altering egress corridors on the second floor of the SunTrust Building, based on his own rough floor plan sketches rather than drawings from a licensed architect or engineer. Significantly, no building or renovation permit had been issued.

30. Ms. Johnson was extremely concerned about Defendants' failure and refusal to properly consider and act on her expressed concerns. Consequently, she met with an attorney on the afternoon of January 10, 2013, and engaged in further protected activity by reporting her concerns to him. Unbeknownst to Ms. Johnson, Defendant White surreptitiously followed her to this meeting.

31. Later on the afternoon of January 10, 2013, Ms. Johnson sent an email to White, Hurst, and Aikens stating that she still had not been provided any construction plans to review

for the proposed improvements to the second floor of the SunTrust Building but that she remained available to do so.  Defendants did not respond to her email.

33.     On January 14, 2013, White escorted Ms. Johnson to the SunTrust Building and provided her access to its second floor for the first time.  Ms. Johnson again expressed her concerns and pointed out multiple issues that needed to be addressed, including egress, emergency lighting, elevator and alarm, and several ADA deficiencies.

33.     Following the building visit, Ms. Johnson advised White that she would email him, Hurst, and Aikens a list of items that needed to be obtained and reviewed and she did so.  These items included a floor plan, preliminary report, and elevator permits, among other things.  She also identified a Licensed General Contractor who could assist with the project and advised them that the State Fire Marshal's Office should also be contacted for potential consultation.

34.     On or about January 22, 2013, Ms. Johnson met with the Licensed General Contractor she had recommended, expressed her concerns about the building, and advised him that she was finalizing a list of issues that needed to be addressed.  The contractor advised her that the cost of the necessary improvements had not been addressed with White but that he was going to meet with White that afternoon to discuss same.

35.     On January 23, 2013, White and Hurst met with Ms. Johnson and suspended her from work.  White revealed to Ms. Johnson for the first time that he had allegedly received "an anonymous email" shortly after he had been appointed to the Public Safety Director position in November 2012 stating that she had been seen "shopping" in her city issued vehicle on a Saturday.  White never addressed Ms. Johnson about this in any manner around the time that it allegedly occurred or anytime before January 23, 2013.

7
Case 3:13-cv-00342-CLC-HBG   Document 1   Filed 06/14/13   Page 7 of 13   PageID #: 7

36. In the January 23, 2013, meeting, White accused Ms. Johnson of violating the City's Vehicle Use Policy and aggressively interrogated her. He revealed that he had had her "under investigation" and "surveillance" and had been surreptitiously following her in her vehicle since November 2012.

37. Between November 2012 and January 2013, White engaged in and/or directed others to engage in discriminatory and retaliatory harassment, stalking or surveillance conduct without Ms. Johnson's knowledge or consent, in violation of her protected rights.

38. Even though she had been intentionally ambushed and caught off guard by Defendants' deliberately orchestrated tactics on January 23, 2013, Ms. Johnson attempted to explain to White and Hurst that she had not violated the spirit of any City policy and had certainly not been insubordinate or derelict in her duties.

39. In the January 23, 2013, meeting, Ms. Johnson stated and Hurst admitted that Hurst had previously been made aware of and had expressly approved her allegedly improper personal use of her city vehicle.

40. Defendants did not and never planned to consider Ms. Johnson's legitimate explanations regarding the conduct of which they accused her. To be sure, a suspension memorandum had already been prepared and signed prior to the January 23, 2013, meeting. Further, on January 24, 2013, Defendants gave Ms. Johnson's job to an individual who had long been retired from the City.

41. Prior to being escorted off of City premises by White on January 23, 2013, Ms. Johnson advised White that she had completed her memorandum of issues that needed to be addressed with respect to the proposed improvements to the second floor of the SunTrust

Building, handed him a copy of it, and placed copies in the mailboxes of Aikens, Hurst, and the City Fire Chief.

42. On January 25, 2013, Defendants discharged Ms. Johnson. Aikens approved her discharge without discussing the allegations lodged against her with her or with the City Council and without any hearing or due process as contemplated in the City personnel rules and policies.

43. Defendants allegedly discharged Ms. Johnson because she allegedly engaged in (1) insubordination, (2) neglect of duty, and (3) violation of City policy and abuse of City equipment.

44. Defendants knew of Ms. Johnson's engaging in protected activities as described above at the times that they subjected her to retaliatory and discriminatory increased scrutiny, surveillance and harassment, and when they suspended and discharged her from employment.

45. Shortly after Ms. Johnson engaged in protected activities, Defendants subjected her to adverse employment actions by subjecting her to increased and unwarranted levels of scrutiny, surveillance and monitoring activity and retaliatory harassment; suspending her on January 23, 2013; and discharging her on January 25, 2013, without any notice, warning, or opportunity to cure under the City's progressive discipline policy and its routine disciplinary practices, policies and procedures.

46. As Mayor, Public Safety Director, and City Administrator, respectively, Aikens, White, and Hurst were Ms. Johnson's supervisors who controlled the terms and conditions of her employment, had authority to suspend and discharge her, and made the decisions to suspend and discharge her.

47. Aikens, White, and Hurst had final policy making authority on behalf of the City and abused their authority under color of state law in subjecting Ms. Johnson to retaliatory conduct and in suspending and discharging her, rendering them individually liable.

48. Defendants' conduct violated clearly established statutory and constitutional rights of which they and objectively reasonable persons in their positions would have known, and such conduct was unreasonable in light of those clearly established rights.

49. There was a causal connection between Ms. Johnson's engaging in protected activities and the retaliatory conduct and suspension and discharge to which Defendants subjected her, which protected activities were acutely near in time to these adverse actions.

50. Defendants' purported reasons for discharging Ms. Johnson are false and are pretexts for retaliation. Defendants further treated Ms. Johnson differently and less favorably in the terms, conditions and privileges of employment than they treated other City officials and employees who engaged in similar or worse conduct than that in which they claim she engaged.

51. Ms. Johnson's speaking or engaging in speech conduct on matters of public concern, communicating with elected public officials, and opposing and refusing to remain silent about or participate in illegal activity motivated and caused Defendants' discriminatory and retaliatory treatment of her and her suspension and discharge.

52. Defendants retaliated against Ms. Johnson in violation of 42 U.S.C. § 1983 and the First Amendment to the United States Constitution and the PEPFA.

53. Defendants' conduct as described in this complaint was undertaken with malice or reckless disregard for and indifference to Ms. Johnson's protected rights and was intentional, malicious, reckless and/or fraudulent.

54. As a result of Defendants' conduct, Ms. Johnson has lost income and other privileges and benefits of employment, has suffered embarrassment, humiliation, emotional distress and anxiety, inconvenience, damage to her reputation and standing in the community, and loss of enjoyment of life, and has incurred attorneys' fees, costs and expenses.

## CLAIMS

55. Ms. Johnson incorporates all of the paragraphs above as if fully stated in each count below.

### Count I Against All Defendants
### Violation of 42 U.S.C. § 1983 / First Amendment Retaliation

56. Defendants deprived Ms. Johnson of her rights secured by the Constitution while acting under color of state law.

57. Ms. Johnson engaged in constitutionally protected speech activity on matters of public concern and her interest in such activity outweighs the City's interest in promoting the efficiency of the public service it provides as an employer.

58. Ms. Johnson's speech activity did not disrupt the workplace and Defendants had no legitimate competing interest in prohibiting it for the Court to balance.

59. Ms. Johnson suffered adverse employment actions as described above that would chill an ordinary person in the exercise of her constitutional rights.

60. Ms. Johnson's speech activity was a substantial or motivating factor in the adverse actions she suffered.

61. Defendants subjected Ms. Johnson to adverse employment actions in violation of 42 U.S.C. § 1983 and the First Amendment to the United States Constitution.

62. Defendants' conduct was undertaken with malice or reckless disregard for or indifference to Ms. Johnson's federally protected rights.

63. Defendants' conduct harmed and caused damage to Ms. Johnson.

### Count II Against Defendant Lenoir City
### Violation of PEPFA

64. Ms. Johnson's exercise of her right to communicate with elected and other public officials was a substantial or motivating factor in the discriminatory and retaliatory conduct, disciplinary suspension, and discharge from employment that she suffered.

65. Defendants discriminated and retaliated against, disciplined and discharged Ms. Johnson in violation of the PEPFA.

66. Defendants' conduct was intentional, reckless, malicious, and/or fraudulent.

67. Defendants' conduct harmed and caused damage to Ms. Johnson

### Count III Against Defendant Lenoir City
### Violation of TPPA

68. Defendants terminated Ms. Johnson's employment solely because she exercised her constitutional and statutory rights and refused to participate in or remain silent about conduct that violated, or that she reasonably believed violated, laws, regulations, or rules intended to protect the public health, safety or welfare.

69. Defendants terminated Ms. Johnson's employment in violation of the TPPA.

70. Defendants' conduct was intentional, reckless, malicious, and/or fraudulent.

71. Defendants' conduct harmed and caused damage to Ms. Johnson.

### Count IV Against Defendant Lenoir City
### Breach of Contract

72. Defendants' conduct as described in this complaint constituted a breach of Ms. Johnson's Employment Agreement with the City.

73. Defendants' conduct harmed and caused damage to Ms. Johnson.

# RELIEF REQUESTED

Ms. Johnson respectfully requests:

1. A jury trial;

2. Back pay and damages for lost benefits;

3. Front pay and damages for lost benefits;

4. Compensatory damages for embarrassment, humiliation, emotional distress and anxiety, inconvenience, damage to reputation, and loss of enjoyment of life;

5. Punitive damages under § 1983 and the TPPA;

6. Treble damages under the PEPFA;

7. Attorneys' fees and expenses;

8. Prejudgment interest and, if applicable, post-judgment interest; and

9. Such other and further legal or equitable relief to which she may be entitled.

Respectfully submitted,

s/Douglas B. Janney III
Douglas B. Janney III (BPR No. 19112)
Law Office of Douglas B. Janney III
2002 Richard Jones Road
Suite B-200
Nashville, Tennessee 37215
(615) 742-5900

Attorney for Plaintiff